IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, trustee, | ) ) ) ) | |
| and | ) ) | |
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND and HOWARD McDOUGALL, trustee, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 08 C 150 |
| -vs- | ) ) | Honorable District Judge Norgle |
| RCS TRANSPORTATION LAP, LLC, a Kentucky limited liability corporation, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION**

This action was brought to collect delinquent fringe benefit contributions owed to the Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") and the Central States, Southeast and Southwest Areas Health and Welfare Fund ("Health and Welfare Fund") by RCS Transportation LAP, LLC ("RCS"). RCS is bound by a collective bargaining agreement, a Participation Agreement, and the Pension Fund and Health and Welfare Fund Trust Agreements ("Trust Agreement") which require it to pay monthly contributions to the Pension Fund and the Health and Welfare Fund on behalf of covered employees. RCS presently owes past due contributions to the Pension Fund for the

months of September 2007 through November 2007 in excess of $144,239.98 and has continually failed to make timely payments to the Health and Welfare Fund. RCS has never contested its obligation to the Pension and Health and Welfare Funds but maintains that it has not paid due to its severe cash flow problems.

RCS's failure to comply with its obligation to pay contributions violates Section 515 of ERISA, 29 U.S.C. § 1145, and causes irreparable harm because the Pension Fund is required to give pension credit to employees of RCS and the Health and Welfare Fund is required to pay covered claims regardless of whether corresponding contributions are ever paid. Moreover, the participants and beneficiaries of the Health and Welfare Fund will be irreparably harmed if RCS's delinquency continues because the Health and Welfare Fund will suspend payment of health and welfare claims if the delinquency is not paid. Further, RCS's non-payment of required contributions adversely affects the financial stability of the Pension and Health and Welfare Funds and their ability to provide benefits. Therefore, the Pension and Health and Welfare Funds request that a preliminary injunction be entered requiring RCS to: (a) pay in full its December 2007 health and welfare and pension contributions to the Pension and Health and Welfare Funds to be received on or before January 15, 2008; and (b) pay in full its contributions for months subsequent to December 2007 to be received by the Pension and Health and Welfare Funds on or before the 15th day of the following month during the pendency of this case.

## FACTS

RCS is bound by a collective bargaining agreement and participation agreement which require it to pay contributions to the Pension Fund and the Health and Welfare Fund on behalf of covered employees (¶ 4 of Jo Evelyn George-Roberson Affidavit, attached to

the Motion as Exhibit A (hereinafter "¶__ of George-Roberson Affidavit")).  RCS is also bound by the Trust Agreements which require the timely payment of contributions.  (¶ 5 of George-Roberson Affidavit).

RCS has not paid its contributions owed to the Pension Fund for the months of September 2007 through November 2007 which, including interest, totals in excess of $144,239.98.  (¶ 7 of George-Roberson Affidavit).  RCS has not made timely payments of its contributions owed to the Health and Welfare Fund for the months of October 2007 and November 2007.  (¶ 8 of George-Roberson Affidavit).  Further, the November 2007 health and welfare contributions were received by the Health and Welfare Fund several weeks late.  (¶ 8 of George-Roberson Affidavit).  RCS has never disputed its indebtedness to the Pension Fund and the Health and Welfare Fund and has indicated that its failure to pay is the result of severe cash flow problems.  (¶ 11 of George-Roberson Affidavit).  RCS's contributions for December 2007, which are due on of before January 15, 2008 are estimated to be $99,705.00 to the Pension Fund and $88,149.00 to the Health and Welfare Fund. (¶ 10 of George-Roberson Affidavit).

## ARGUMENT

Section 502(a)(3) of ERISA expressly authorizes this Court to "enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan."  29 U.S.C. § 1132(a)(3). The failure of RCS to remit contributions to the Pension Fund and the Health and Welfare Fund is a violation of both the Pension and Health and Welfare plans and Section 515 of ERISA.  29 U.S.C. § 1145.[1]  Based upon these statutory provisions, the

---

[1] Section 515 of ERISA provides:

Seventh Circuit has held that "ERISA provides for civil enforcement, including an injunction, of an employer's obligations to make contributions to pension plans." Gould v. Lambert Excavating, Inc., 870 F.2d 1214, 1217 (7th Cir. 1989). Under identical circumstances, other courts in this district have enjoined employers from failing to pay required contributions to the Pension Fund and the Health and Welfare Fund. Central States Pension Fund v. Chas J. Burnham Cartage, Inc., 00 C 4970 (N.D. Ill. Jan. 10, 2001)(a copy of which is attached as Exhibit B); Central States Pension & Health & Welfare Funds v. Lewis Truck Lines, Inc., Case No. 00 C 6597 (N.D. Ill. Nov. 14, 2000) (a copy of which is attached as Exhibit C); Central States Pension Fund v. Research Oil Co., 99 C 4488 (N.D.Ill. July 16, 1999)(a copy of which is attached as Exhibit D); Central States Pension and Health and Welfare Funds v. Double S Express, Inc., 99 C 0793 (N.D.Ill. Feb. 9, 1999)(a copy of which is attached as Exhibit E); Central States Pension Fund v. Youngstown Osteopathic Hospital Assoc., 98 C 7435 (N.D. Ill. Dec. 4, 1998)(a copy of which is attached as Exhibit F); Central States Pension and Health and Welfare Fund v. Hyman Freightways, Inc., 97 C 0987 (N.D.Ill. July 22, 1997)(a copy of which is attached as Exhibit G); Central States Pension & Health & Welfare Funds v. Foreway Express, Inc., 95 C 7260 (N.D.Ill. Dec. 14, 1995)(a copy of which is attached as Exhibit H); and Central States Pension Fund v. Cox Transfer, Inc., 93 C 4600 (N.D.Ill. Aug. 13, 1993)(a copy of which is attached as Exhibit I).[2]

---

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement. 29 U.S.C. § 1145.

[2] See also, Carpenters Local 1471 v. Bar-Con, Inc., 668 F. Supp. 560 (S.D. Miss. 1987); Mamula v. Satralloy, Inc., 578 F.Supp. 563 (S.D. Ohio 1983); Combs v. Hawk Contracting, Inc., 543 F. Supp. 825 (W.D. Pa. 1982); Van Drivers Local Union No.

In Gould, the Seventh Circuit affirmed the entry of an injunction requiring an employer to pay fringe benefit contributions on time and indicated that the decision to provide injunctive relief should be based on an analysis of the threat of irreparable harm to the moving party, the possible injury to the opposing party, the likelihood that the movant will succeed on the merits of its claim and public policy considerations. Gould, 870 F.2d at 1217. Analysis of these four factors strongly indicates that the requested preliminary injunction against RCS should be granted.

1. **Irreparable Harm**

In its discussion of the irreparable harm factor, the Gould court indicated that when a multiemployer fund seeks an injunction requiring an employer to pay contributions, "the probability of irreparable harm is strong" because ERISA was intended to protect the "well-being and security of millions of employees and their dependents" and such plans are "affected with a national public interest." 870 F.2d at 1221. Here, the failure of RCS to pay promised contributions irreparably harms the Pension Fund and the Health and Welfare Fund and its participants and beneficiaries in several respects.

First, irreparable harm exists where "[d]amages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and

---

392 v. Neal Moving & Storage, 551 F.Supp. 429 (N.D. Oh. 1982); Painters Industry Pension Fund v. Hartline-Thomas, Inc., 4 Employee Benefits Cases (BNA) 1199 (D.D.C. 1983); Building Trades Benefit Funds v. Boelter, 3 Employee Benefits Cases (BNA) 2184 (W.D. Wis. 1982); D.C. Paving Industry Trust v. Jones & Artis Co., 2 Employee Benefits Cases (BNA) 2227 (D. D.C. 1981); Central States Pension Fund v. Admiral Merchants Motor Freight, Inc., 511 F.Supp. 38 (D. Minn. 1980), *aff'd sub nom* Central States Pension Fund v. Jack Cole-Dixie Highway Co., 642 F.2d. 1122 (8th Cir. 1981); Huge v. Long's Hauling Co., 442 F. Supp. 1041 (W.D. Pa. 1977), *aff'd*, 590 F.2d 457 (3rd Cir. 1978); *cert. denied*, 442 U.S. 918 (1979).

collected." Roland Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380, 386 (7th Cir. 1984). Here, RCS is experiencing severe cash flow problems. If RCS is unable to remain current in its pension and health and welfare obligations, it is unlikely that it will be able to satisfy a large judgment that will include not just the approximate $144,000.00 in contributions and interest that is currently past due, but also liquidated damages as well as the Pension Fund's attorneys' fees and costs. Moreover, if an injunction is not entered, the delinquency of RCS to the Pension Fund and the Health and Welfare Fund will increase on January 15, 2008, by an approximate amount of $187,000.00 for the December 2007 contributions. (¶ 10 of George-Roberson Affidavit). If RCS fails to make contributions to the Pension Fund and the Health and Welfare Fund, this amount will continue to increase. Under these circumstances, the Pension Fund and the Health and Welfare Fund will be irreparably harmed if a preliminary injunction is not entered. Mamula v. Satralloy, Inc., *supra*.

Second, the Pension Fund is irreparably harmed because the Pension Plan and ERISA require it to provide pension credits and pay pension benefits to the employees of RCS regardless of whether the contributions that are intended to pay for the benefits are ever paid. (See ¶ 12 of George-Roberson Affidavit).[3] The Pension Fund's duty to pay

---

[3] *See also* cases cited at p. 4 attached as Exhibits B through I. The Supreme Court has noted that the Secretary of Labor has consistently taken the position that:

> Under ERISA's minimum participation, vesting, and benefit accrual standards for pension plans, 29 U.S.C. §§ 1052, 1053, 1054, a pension plan covered by ERISA must award credit "solely on the basis of service performed for a participating employer, regardless [of] whether that employer is required to contribute for such service or has made or defaulted on his required contributions." In the Secretary's judgment, "Any plan term or Trustees' resolution to the contrary is . . . unlawful and unenforceable." Department of

benefits without receipt of corresponding contributions constitutes irreparable harm which justifies the entry of an injunction. Id. Central States Pension Fund v. Jack Cole-Dixie Highway Co., *supra*.; Building Trades Benefit Funds v. Boelter, *supra*. Additionally, RCS will be placed on suspension of benefits status if RCS does not remain current in its obligations. If RCS does not pay its health and welfare contributions, its employees (the Health and Welfare Fund's participants and beneficiaries) will not receive health and welfare coverage. The loss of health and welfare coverage for employees constitutes irreparable harm warranting the entry of an injunction. Id., Central States Pension Fund v. Jack Cole-Dixie Highway Co., *supra*.; Building Trades Benefit Funds v. Boelter, *supra*; *see also* Van Drivers Local 392 v. Neal Moving & Storage Co., *supra*.; Mamula v. Satralloy, Inc., *supra*.; D.C. Paving Industry Trust v. Jones & Artis Co., *supra*.

Employer delinquencies also irreparably harm the Pension Fund and the Health and Welfare Fund because they adversely affect the Funds' ability to meet funding standards and impact on its financial integrity. Van Drivers Local 392 v. Neal Moving & Storage Co., *supra*.; Combs v. Hawk Contracting, Inc., *supra*. When ERISA was amended in 1980, the Senate Committee on Labor and Human Resources noted:

> Delinquencies of employers in making required contributions are serious problems for most multiemployer plans. Failure of employers to make promised contributions in a timely fashion imposes a variety of costs to plans. While contributions remain unpaid, the plan loses the benefit of income that could have been earned if the past due amount had been received and invested on time. Moreover, additional administrative costs are incurred in

---

Labor Advisory Op. No. 76-89 (Aug. 31, 1976) (reprinted in App. to Pet. for Cert. A70-71); accord, Department of Labor Advisory Op. No. 78-28A (Dec. 5, 1978).

Central States Pension Fund v. Central Transport, Inc., 472 U.S. 559, 567 n.7 (1985).

detecting and collecting delinquencies. Attorneys fees and other legal costs arise in connection with collection efforts.

These costs detract from the ability of plans to formulate or meet funding standards and adversely affect the financial health plans. Participants and beneficiaries of plans as well as employers who honor their obligation to contribute in a timely fashion bear the heavy cost of delinquencies in the form of lower benefits and higher rates. Moreover, in the context of the legislation, uncollected delinquencies can add to the unfunded liability of the plan and thereby increase the potential withdrawal liability for all employers.

\* \* \*

Sound national pension policy demands that employers who enter into agreements providing for pension contributions not be permitted to repudiate their pension promises.

The public policy of this legislation to foster the preservation of the private multiemployer plan system mandates that provision be made to discourage delinquencies and simplify delinquency collection.[4]

Finally, ERISA prohibits the Pension Fund and the Health and Welfare Fund from lending money or extending credit to RCS and prohibits the use of the Pension Fund and the Health and Welfare Fund's assets by RCS.[5] By failing to make required payments,

---

[4] Senate Committee on Labor and Human Resources, S1076 - The Multiemployer Pension Plan Act Amendments of 1980, Summary and Analysis of Consideration 96th Cong., 2d Sess. at 43-4 (Comm. Print, 1980).

[5] An employer whose employees are covered by an employee benefit plan is a party in interest under ERISA. 29 U.S.C. § 1002. Section 406 of ERISA provides:

> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect --
>
> \* \* \*
>
> (B) lending of money or other extension of credit between the plan and a party in interest;
>
> \* \* \*

RCS enjoys the benefit of a loan or an extension of credit between itself and the Health and Welfare Fund and the Pension Fund in violation of ERISA. Prohibited Transaction Exemption 76-1, 41 Fed. Reg. 12,740. Unless enjoined by this Court, the violation will continue because the failure of RCS to pay its December 2007 contributions will force the Pension Fund and the Health and Welfare Fund to continue to extend further credit to RCS without even a promise to pay.

2. **Success on the Merits**

The collective bargaining agreement, the Participation Agreement and the Trust Agreements establish that RCS is obligated to remit current contributions to the Pension and Health and Welfare Funds. Indeed, RCS has acknowledged its contribution obligation, but has simply elected to prefer other creditors over the Pension and Health and Welfare Funds. Thus, the Pension and Health and Welfare Funds have established that they will prevail on the merits.

3. **Possibility of Harm to RCS**

In Roland Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380, 387 (7th Cir. 1984), the Seventh Circuit held "the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor." As noted above, the duty of RCS to pay contributions is undisputed while its non-payment irreparably harms the Pension and Health and Welfare Funds. The entry of a preliminary injunction requiring the timely payment of

---

    (D)    transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan, or . . .

29 U.S.C. § 1106(a)(1).

contributions during the pendency of this case will not harm RCS because it is only being required to do exactly what it is contractually obligated to do. RCS is financing current operations, at least in part, with money that belongs to the Pension and Health and Welfare Funds. Thus, the balance of harm factor weighs heavily in favor of the Pension and Health and Welfare Funds.

### 4. **Public Interest**

An order granting or denying a preliminary injunction may have consequences beyond the immediate parties and those interests must be considered. Roland Machinery Co., 749 F.2d at 388. Because "the continued well-being and security of millions of employees, retirees, and their dependents are directly affected by multiemployer pension plans," such plans "are affected with a national public interest." 29 U.S.C. § 1001a. Because the financial stability of fringe benefits funds is a public concern, the entry of a preliminary injunction is certainly in the public interest. Painters Industry Fund v. Hartline-Thomas, Inc., *supra*.[6]

---

[6] *See also* cases cited at p. 4 attached hereto as Exhibits B through I.

## **CONCLUSION**

Because the failure of RCS to pay fringe benefit contributions on a timely basis causes irreparable harm to the Plaintiffs, a preliminary injunction should be entered which orders RCS to: (a) pay in full its December 2007 pension and health and welfare contributions with said payment to be received by the Pension Fund and the Health and Welfare Fund on or before January 15, 2008; and (b) pay in full all contributions owed to the Pension Fund and the Health and Welfare Fund for months subsequent to December 2007, to be received by the Pension Fund and the Health and Welfare Fund on or before the 15th day of the following month during the pendency of this case.

Respectfully submitted,

/s/ Rebecca K. McMahon
Rebecca K. McMahon
Attorney for Plaintiffs
Central States, Southeast and Southwest Areas
Health and Welfare and Pension Funds
9377 West Higgins Road
Rosemont, Illinois  60018-4938
847/518-9800, Ext. 3441
ARDC #06290192

January 9, 2008